IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **CHAPTER 7** |
| **LAMBERT OIL COMPANY, INC.** | ) | |
| | ) | |
| | ) | **CASE NO.  03-01183-WSA** |
| Debtor. | ) | |
| | ) | |

| | | |
|---|---|---|
| | ) | |
| **WILLIAM E. CALLAHAN, JR., TRUSTEE FOR LAMBERT OIL COMPANY, INC.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ADVERSARY PROCEEDING** |
| | ) | **NO. 05-07040** |
| NICK J. LAMBERT | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM DECISION (revised)

In this adversary proceeding, William E. Callahan, Jr., the Chapter 7 bankruptcy

trustee for Lambert Oil Company, Inc., the Debtor,  seeks pursuant to 11 U.S.C. § 542 and § 544

to recover from the Defendant, Nick Lambert (referred to hereafter as Lambert or Mr. Lambert),

the president and sole shareholder of the Debtor, the aggregate balance of certain sums advanced

by the Debtor to or for Lambert's benefit.  These various sums were recorded in an account,

Account 2610, the Debtor maintained in its financial records to reflect all sums owed by Lambert

to the Debtor or vice-versa.  The parties agree that, subject to resolution of the three issues

presented below, Mr. Lambert owed the Debtor $307,371.54 on the date this case was

filed.(Stipulation ¶ 17.)

>The issues on which the Trustee and Lambert disagree are:
>1. Should the entries charged to Account 2610 that were designated as "Clark" in the total amount of $22,961.16 during the period of July 1, 1995 through March 24, 2003 be added to the balance owed by Lambert to the Trustee?
>2. Should the Court impose pre-judgment interest on the balance of Account 2610 for each fiscal year in which Lambert owed the Debtor or the Trustee money?
>3. Is Lambert entitled to set off the amount paid to Highlands Union Bank from the sale of property he pledged as collateral for the bank's loan to the Debtor?

(Trustee's Mem. 2-3.)

Before proceeding to set forth its Decision in this proceeding, the Court first wishes to commend and thank counsel for the parties for their professionalism in clarifying the involved factual and legal issues presented in this dispute and in resolving matters which as good attorneys they knew should not be in legitimate question, dealing with each other and the Court with admirable courtesy, fairness, candor and intelligent advocacy. By doing so they have assisted the Court greatly in its effort to render justice between the parties.

## FINDINGS OF FACT

The parties agree that the Stipulation they have filed contains the facts necessary for the Court to make its decision. A copy of that **Stipulation** is attached as an exhibit to this Decision and is incorporated by reference. Nevertheless, the Court will also take judicial notice of certain matters contained in the bankruptcy schedules and otherwise will consider undisputed statements of fact contained in the briefs filed with the court concerning the issues in dispute. The Court will summarize those facts it believes to be critical to its decision.

Mr. Nick Lambert was the President and sole officer, director, and shareholder of

the Debtor. As such, Lambert was employed by the Debtor and was responsible for managing

the Debtor from inception until the date of filing. The Debtor maintained in its financial records

an account designated Account 2610[1] to reflect sums owed by the Debtor to Lambert and/or

owed by Lambert to the Debtor. From July 1, 1995 to March 24, 2003, Account 2610 was used

to record all transfers, except salaries and wages, between the Debtor and Lambert. On March

24, 2003, the day this bankruptcy case was commenced, the Debtor's financial records showed an

account balance of $1,143,583.60. Even though the pre-bankruptcy balance of this account

exceeded one million dollars according to the company's accounting records, it was not listed as

an asset of the company on Schedule B. Neither was it disclosed as a transfer outside the

ordinary course of business in the answer to question number 10 of the Statement of Financial

Affairs filed with the schedules. The circumstances surrounding this absence of disclosure were

not explained or explored at trial. The parties agree that this account balance incorrectly includes

entries titled "First Bank & Trust," "Combine Accounts," "Mrs. Joe Meeks," and "Interest"

totaling $813,261.03. The parties dispute whether entries designated as "Clark," which total

$22,961.16 should be included in the account balance. Consequently, the Trustee and Lambert

agree that Lambert owed the Debtor $307,371.54[2] on the date the case was filed, subject to the

---

[1] The account was variously titled "Due to/Due from Stockholder," "Due from/Due to Stockholder," and "Due from Stockholder." Initially, the account was numbered 261, but later was designated Account Number 2610.

[2] The Court notes that subtracting the total of the agreed entries incorrectly attributed to Account 2610 ($813,261.03) and the Clark entries ($22,961.16) from the account balance on the date the bankruptcy case was filed ($1,143,583.60) equals $307,361.41, a discrepancy of $10.13 from the stipulated amount owed by Mr. Lambert.

Court's determination of the three issues previously noted. The following paragraphs excerpted

from the parties' Stipulation provide a breakdown of the agreed amount owed by Lambert to the

Debtor:

> 28. The Debtor's financial records for Account 2610 reflect the following:
>
> a. entries for forty-six (46) payments of $2,777.77 and the nine (9) payments of $2,777.78 totaling $152,777.44. Each of these entries is for a payment to Connie Lambert, Lambert's ex-wife, in satisfaction of Lambert's liability to Connie Lambert for equitable distribution of marital property.
>
> b. entries in fiscal year 2001-02 for $49,830.54 in payments to Highlands Union Bank and $10,912.44 in payments on the "Carter Lambert Note" and entries in fiscal year 2002-03 for $38,243.52 in payments to Highlands Union Bank. Each of these entries is for a payment on a promissory note on which Lambert and his father, Carter Lambert, were liable, but on which the Debtor was not. The proceeds of the promissory note were not received by the Debtor.
>
> c. entries in fiscal year 1995-96 for $10,500.00 in payments to "C. Lambert" and entries in fiscal year 1996-97 for $5,000.00 in payments to "C. Lambert." Each of these entries is for a payment to either Lambert's ex-wife or Lambert's father, neither of whom the Debtor owed money at the time of the payments.
>
> d. an entry on March 31, 1999 for an increase of $190,000.00. This entry was to reflect the Debtor's payment on the "Len-Wolf Investment" in which Lambert had an interest, but in which the Debtor did not have an interest.
>
> e. an entry on June 30, 2001 for a decrease of $250,000.00. This entry was to reflect the repayment by Lambert and his father to the Debtor of a debt arising from the payoff of a personal loan of Lambert and his father with proceeds of the Debtor's March 2001 consolidation loan with Highlands Union Bank.
>
> f. entries for thirty-five (35) payments to Lambert in differing amounts ranging from $500.00 to $100,000.00. These entries were to reflect withdrawal of the Debtor's funds by Lambert whenever he needed funds, but not for the benefit of the Debtor.
>
> g. two entries totaling $983.82 in fiscal year 2001 labeled "The Virginian." These entries were to reflect the Debtor's payment of Lambert's personal expenses at The Virginian golf club located in Bristol, Virginia.

(Stipulation 6-7.)

<u>"Clark" Payments</u>

The parties agree that the "Clark" entries represent principal and interest payments made by the Debtor on a personal loan obtained by Lambert from a third party on which the Debtor had no liability and that the loan's proceeds were used by Mr. Lambert to buy stock in Clark Petroleum Company. The payment arrangement between the Debtor and Mr. Lambert is explained in notes to financial statements accompanying the Debtor's June 30, 1991 Financial Reports.

> In addition to the Evergreen note payable payments, Lambert Oil Company usually pays certain notes payable principal and interest for Nick Lambert which arose from the 1987 merger with Clark Petroleum Company (see Note 1). Reimbursements can be made by the stockholder for these payments at any time. The usual monthly payments for these loans are $3845 and $1322 for a total of $5167. Interest is computed monthly on the outstanding balance of the stockholder loan although no terms of payment are stated.

(Stipulation ¶15.) After Lambert purchased the Clark Petroleum stock, Mr. Lambert operated Clark Petroleum and Lambert Oil separately for several months. In 1987, the Debtor and Clark Petroleum merged. Under the terms of the merger, the Clark Petroleum assets were given to Lambert Oil and Lambert Oil assumed Clark Petroleum debts. .

The Trustee believes the entries designated as "Clark" should be added to the agreed amount Mr. Lambert owes the Debtor. In support of this, the Trustee cites Va. Code § 13.1-721(A) which sets forth the effects of a merger. The Trustee argues that nothing in the statute changes the character or legal nature of the personal loan Mr. Lambert caused the Debtor to pay.

5

Mr. Lambert testified that he was not paid for the Clark stock he owed prior to the merger and he did not retain any Clark stock after the merger. Further, Mr. Lambert testified it was his belief that the Account 2610 entries designated as "Clark" represented corporate debt that he had personally guaranteed. Mr. Lambert's understanding of the merger was that the income earned from the Clark Petroleum assets would be used to pay off the loan he obtained to purchase the Clark Petroleum stock. Consequently, counsel for Mr. Lambert argues that the entries designated as Clark should not have been recorded in Account 2610. Instead, these payments should have been recorded as payments on a corporate loan. Neither Mr. Lambert nor his counsel, however, has made any contention or offered any evidence to the effect that Lambert Oil's financial statements, including the notes thereto, did not accurately reflect the Articles of Merger of Clark Petroleum into Lambert Oil or the other legal documentation executed in connection with the loan and the merger. The Court's inference from Mr. Lambert's testimony is that he believes the legal documentation does not accurately reflect his understandings and intentions with respect to the company's assumption of responsibility for the debt he incurred to acquire Clark Petroleum.

The Court has obtained from the State Corporation Commission of Virginia a copy of the Articles of Merger of Clark Petroleum with and into Lambert Oil. The Court takes judicial notice that such Articles were signed by Nick Lambert on behalf of both companies and provide that the shares of Clark Petroleum would be converted into newly issued shares of Lambert Oil and they make no reference to any assumption by Lambert Oil of any obligations of Mr. Lambert in connection with that merger. The Court will docket these Articles as an addition to the trial exhibits introduced by counsel.

Pre-judgment Interest

The parties agree that Virginia law governs the award of pre-judgment interest in this case. The Trustee argues that the facts of this case weigh heavily in favor of an award of prejudgment interest.

> Lambert was the sole officer, director, and shareholder of the Debtor and used the Debtor's bank accounts as his personal source of loans, allowing him to avoid the payment of interest charged by a financial institution. Lambert did this despite the facts that the Debtor recognized and reported interest income from Lambert on its federal and state income tax returns and that from some time before or in the Debtor's 1997-98 fiscal year it became insolvent.

(Trustee's Mem. 5 .) The Trustee requests pre-judgment interest be awarded based on the balance in Account 2610 at the end of each fiscal year during which or after Lambert Oil become insolvent until the date the Court enters a judgment in this proceeding.[3]  Counsel for Mr. Lambert asserts that pre-judgment interest, if any is awarded, should be based on the principal amount awarded, not the year-end balance of Account 2610. Further, Mr. Lambert's counsel argues that pre-judgment interest should begin, if at all, no earlier than the date the Trustee made the demand for turnover of the funds, reasoning that this is the date Mr. Lambert defaulted on his obligations.

Exhibit E to the Stipulation lists the total assets and total liabilities of the Debtor at the end of each fiscal year from 1996 to 2002. The total asset figure for each fiscal year must be reduced by the entries that the parties agree were incorrectly added to Account 2610, specifically entries titled "First Bank & Trust", "Combine Accounts", "Mrs. Joe Meeks" and

---

[3] In his Complaint initiating this adversary proceeding, however, he asked for pre-judgment interest from July 1, 2002 and he has not sought to amend that Complaint. In view of the agreed elimination of the interest component from the account balance, however, counsel for the Defendant does not dispute the Trustee's right to seek pre-judgment interest preceding such date.

7

"Interest." The total adjusted assets and total liabilities at end of each fiscal year are as follow.

| Fiscal Year Ending June 30 | Total Assets per Stipulation Exhibit E | Total of Entries incorrectly added to Account 2610 | Total Adjusted Assets | Total Liabilities per Stipulation Exhibit E |
|---|---|---|---|---|
| 1996 | $2,898,908 | $64,452.94[4] | $2,834,455.06 | $2,740,276 |
| 1997 | $3,130,507 | $100,857.88[5] | $2,965,196.18 | $2,956,870 |
| 1998 | $3,387,675 | $118,236.03[6] | $3,104,128.15 | $3,328,548 |
| 1999 | $3,845,628 | $133,935.43[7] | $3,428,145.72 | $4,032,955 |
| 2000 | $5,122,870 | $125,195.53[8] | $4,580,192.19 | $5,611,625 |
| 2001 | $5,144,697 | $127,870.49[9] | $4,474,148.70 | $6,014,628 |
| 2002 | $4,405,913 | $106,711.08[10] | $3,628,653.62 | $5,703,511 |

Based on the above information, the Debtor's liabilities exceeded its assets at the end of the

fiscal year ending June 30, 1998. 11 U.S.C. §101(32A) provides that a corporation is insolvent

when the sum of its debt is greater than all of its property, excluding exempt and fraudulently

transferred property. Accordingly, this Court finds that the Debtor was insolvent on June 30,

1998 and remained insolvent to the date of filing bankruptcy.

---

[4] *See* Stipulation ¶ 16 & 20. The Clark entries were not included in this calculation because the Court finds that these entries were properly included in Account 2610. *See infra* pp. 11-12.

[5] *See* Stipulation ¶ 21. The Clark entries were not included in this calculation because the Court finds that these entries were properly included in Account 2610. *See infra* pp. 11-12.

[6] *See* Stipulation ¶ 22.

[7] *See* Stipulation ¶ 23.

[8]*See* Stipulation ¶ 24.

[9] *See* Stipulation ¶ 25.

[10] *See* Stipulation ¶ 26.

<u>Lambert's Asserted Right of Setoff</u>

The Defendant personally guaranteed loans made to the Debtor throughout the

Debtor's existence.  Prior to the commencement of this case, Lambert granted Highlands Union

Bank a lien on real property owned solely by him to secure a loan by the Bank to the Debtor.

This deed of trust, according to proof of claim no. 46 filed by Highlands Union Bank in the case,

was given as security for the payment of a certain note dated March 28, 2001 made by Lambert

Oil in favor of the Bank in the original amount of $1,500,000.00.  A copy of that note attached to

the proof of claim indicates that Mr. Nick Lambert was a co-maker.  The proof of claim asserts a

petition date indebtedness upon this note of $1,477,583.83.  The docket does not reflect that any

objection has been filed to this proof of claim.  On April 30, 2003, after this case was

commenced, the Bank sold this property securing the Debtor's loan. (Def.'s Mem. 9.)  As a result

of the sale, the Bank received $283,784.40, which was applied to the outstanding balance of the

Debtor's loan. (Def.'s Mem. 9.)  It is this amount for which Mr. Lambert claims a right of setoff

pursuant to 11 U.S.C. §553 against the amount otherwise due from him to the Debtor by virtue of

the previously described "due from shareholder" account. The amount derived by the Bank from

the sale of Mr. Lambert's property was only a partial satisfaction of the debt Lambert Oil owed to

it. (Def.'s Mem. 9-10.)   No contention has been made that the Bank accepted these foreclosure

proceeds in full satisfaction of the debt. (Def.'s Mem. 9-10.)

The Debtor lists Highlands Union Bank on Schedule D with two secured claims

totaling $1,100,000.00: an $800,000 claim secured by the lease of Citgo Convenience Store #112

located in Rosedale, Va., which is valued at $600,000.00 on Schedule D, and a $300,000.00

claim secured by the Debtor's office and warehouse property located in Abingdon, Va., which is

9

valued at $300,000 on Schedule D. The Debtor also lists the Bank on Schedule F with a

$539,079.33 unsecured claim for letters of credit. Under penalty of perjury, Mr. Lambert signed

the Debtor's bankruptcy schedules, certifying that they were true and correct to the best of his

knowledge, information and belief.

On January 21, 2004, the Bank filed the following five proofs of claim in this case

totaling $2,025,141.52.[11]

| Claim # | Stated Basis for Debt | Collateral/Unsecured | Amount |
|---------|----------------------|---------------------|--------|
| 40 | Money loaned on June 12, 2003 | Unsecured | $3,356.97 |
| 43 | Money loaned on March 6, 2003[12] | Unsecured | $75,111.28 |
| 44 | Money loaned on February 1, 2003[13] | Unsecured | $118,858.53 |
| 45 | Money loaned on March 28, 2002, July 28, 2002, and January 19, 2003 | Second deed of trust on real estate owned by Mr. Lambert and a subordinate interest in equipment and inventory | $350,230.81 |
| 46 | Money loaned on March 28, 2001 | First deed of trust on real estate owned by Mr. Lambert, 100 shares of Len-Wolf stock and a UCC-1 on the Debtor's equipment and inventory | $1,477.583.83 |

To date, Mr. Lambert has not filed a proof of claim against the estate for the value of his property

---

[11] Three unsecured claims totaling $197,326.78 and two secured claims which total $1,827,814.64.

[12] Supporting documentation filed with the proof of claim provides the loan was used to establish an irrevocable letter of credit for Marathon Ashland Petroleum.

[13] Supporting documentation filed with the proof of claim provides the loan was used to establish an irrevocable letter of credit for Citgo Petroleum Corporation.

which was liquidated by the Bank and applied to the balance Lambert Oil owed it.

Although the Trustee's Complaint initiating this adversary proceeding asserted a right of recovery pursuant to both section 542 and 544 of the Bankruptcy Code, the allegations made no specific allegations of transfers made for no consideration or with the intent to hinder, delay or defraud creditors. The Defendant's Answer did not raise any issue with respect to such omission or move to dismiss the section 544 reference. Neither did that Answer assert any right of setoff of the proceeds of Highland Union Bank's foreclosure sale of Mr. Lambert's property after the filing date against the Trustee's claim upon the "Due from Shareholder" account, although such foreclosure sale had occurred long prior to the filing of this adversary proceeding.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984. Recovery of property of the bankruptcy estate is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(O).

### "Clark" Payments

Under Virginia law, when a merger becomes effective, several legal consequences follow.

> 1. Every other corporation party to the merger merges into the surviving corporation and the separate existence of every corporation except the surviving corporation ceases;
> 2. The title to all real estate and other property owned by each corporation party to the merger is vested in the surviving corporation without reversion or impairment;
> 3. The surviving corporation has all liabilities of each corporation party to the merger;
> 4. A proceeding pending by or against any corporation party to the

merger may be continued as if the merger did not occur or the surviving
corporation may be substituted in the proceeding for the corporation whose
existence ceased;

      5. The articles of incorporation of the surviving corporation are
amended to the extent provided in the plan of merger; and

      6. The former holders of the shares of every corporation party to the
merger are entitled only to the rights provided in the articles of merger or
to their rights under Article 15 (§ 13.1-729 et seq.) of this chapter.

Va. Code §13.1-721(A) (1999)(amended 2005).

      The parties agree that Mr. Lambert bought Clark Petroleum stock with borrowed
money and that the Debtor made Mr. Lambert's payments on this loan. The merger of Clark
Petroleum and the Debtor did not change the nature of Mr. Lambert's loan or his liability upon it
or place upon Lambert Oil any responsibility for its repayment. **The Court notes that Mr.
Lambert's expectation that the profits generated by the combination of Lambert Oil and
Clark Petroleum would be used to pay the loans obtained to purchase the Clark Petroleum
stock is not at all inconsistent with his retention of liability for payment of these loans and
their satisfaction by means of distributions from the enterprise, in short, actually what did
occur.** Accordingly, the Court concludes that the entries charged to Account 2610 designated as
"Clark" in the total amount of $22,961.16 were for a personal obligation of Mr. Lambert's and
are properly included in the amount Mr. Lambert owes the Trustee.

Pre-judgment Interest

      The parties agree that the governing provision on this issue is Va. Code §8.01-382
(2005), which provides "[i]n any action at law or suit in equity . . . the judgment or decree of the
court, may provide for interest on any principal sum awarded, or any part thereof, and fix the
period at which the interest shall commence." Whether pre-judgment interest should be awarded

under this statute is a matter within the sound discretion of the court. *See Hitachi Credit America Corp. v. Signet Bank,* 166 F.3d 614, 633 (4th Cir. 1999).

The purpose of pre-judgment interest is "to compensate the plaintiff who has been without relief for an extended period of time." *Gill v. Rollins Protective Services Co.,* 836 F.2d 194, 198 (4th Cir. 1987). The Defendant argues that pre-judgment interest, if any is to be awarded, should start from the date the Trustee made demand for the funds. *See Marks v. Sanzo,* 231 Va. 350, 356, 345 S.E.2d 263, 267 (1986) (stating prejudgment interest is "necessary to place the [plaintiff] in the position he would have occupied if the party in default had fulfilled his obligations"). The Defendant's argument ignores three factors. First, Mr. Lambert was in complete control, as president and sole shareholder of the Debtor, of whether or not the Debtor made any demand upon him for payment of either principal or interest. Secondly, Account 2610 was accruing interest, which the Debtor was treating as taxable income during the time period in question. (Stipulation ¶ 16.) If Mr. Lambert were to be relieved of paying interest entirely during this period, a very substantial basis for the Debtor not demanding payment earlier has been removed. Because the Debtor's balance sheet and therefore its credit worthiness to its creditors were favorably affected by accounting interest accrued as income and an asset, this was clearly a benefit to Mr. Lambert as the sole shareholder of Lambert Oil; thus it is equitable that Mr. Lambert should be responsible for interest during the time of insolvency. Lastly, during the insolvency period, the Debtor was paying interest on bank loans at rates ranging from 8.25% to 9.50%. (Stipulation ¶ 30-31.) Accordingly, the Debtor was suffering a real loss by lending money to its owner at the same time it was paying interest on its loans at rates in excess of the judgment rate of interest.

13

The facts of this case support awarding prejudgment interest. Lambert used the
Debtor as his personal source of loans; thus allowing him to avoid paying interest to a bank. For
55 months, Mr. Lambert directed the Debtor to pay his equitable distribution of marital property
payments to his former spouse. In March 1999, the Debtor paid $190,000 for Mr. Lambert's
personal stock investment in Len-Wolfe. Lambert also regularly took money from the Debtor
ranging from $500 to $100,000 "whenever he needed funds." (Stipulation ¶ 28(f).) In 2001, the
Debtor paid Mr. Lambert's personal expenses at The Virginian Golf Club.

Having considered the arguments presented and the facts in this case, the Court
concludes it is appropriate to award pre-judgment interest upon the fiscal year-end balances of
the adjusted Account 2610 balances beginning with the fiscal year-end balance that the Debtor
was insolvent. As explained above, the Court found that the Debtor was insolvent from June 30,
1998 to the time of filing bankruptcy. The relevant adjusted fiscal year-end balances of Account
2610 on which pre-judgment interest is awarded are as follows.

| Fiscal Year | Account 2610 Balance per Stipulation Exhibit D (Beginning Balance) | Additions to Account 2610 per Stipulation Exhibit D | Incorrect Entries added to Account 2610 per Stipulation Exhibit D[14] | Adjusted Account 2610 Balance (Year End) |
|---|---|---|---|---|
| 1998 | $263,637.86 | $334,785.67 | $133,935.43 | $464,488.10 |
| 1999 | $464,488.10 | $179,436.91 | $125,195.53 | $518,729.48 |
| 2000 | $518,729.48 | - $71,369.30 | $127,870.49 | $319,489.69 |
| 2001 | $319,489.69 | $74,532.70 | $101,459.76 | $292,562.63 |
| 2002 | $292,562.63 | $79,012.91 | $41,242,84 | $330,332.70 |

---

[14] The Clark entries were not included in this amount because the Court found that these
entries were properly included in Account 2610. *See supra* pp. 11-12.

With regard to the correct prejudgment interest rate, the Virginia Code currently

provides in relevant part that

> The judgment rate of interest shall be an annual rate of six percent . . . . If
> the contract or other instrument does not fix an interest rate, the court shall
> apply the judgment rate of six percent to calculate prejudgment interest
> pursuant to §8.01-382 and to calculate post-judgment interest.

Va. Code §6.1-330.54 (2004) (amended 2005).  The Trustee has requested prejudgment interest

be awarded at nine percent, which was the rate of prejudgment interest provided in Va. Code

§6.1-330.54 prior to the 2004 amendment.[15] (Trustee's Mem. 6.) The Trustee argues that nine

percent interest is consistent with the interest rates the Debtor was paying during the time Mr.

Lambert owed it money.[16]  While the Defendant has opposed the granting of prejudgment

interest, he has not challenged the nine percent rate asserted by the Trustee.  The Court concludes

it is appropriate to award prejudgment interest upon the respective June 30 year-end balances at

the interest rate in effect on the immediately following July 1 of each year.

### Lambert's Asserted Right of Setoff

Mr. Lambert claims a right of setoff pursuant to 11 U.S.C. §553 in the amount of

$283,784.40.  This amount was received by the Bank as a result of a post-petition foreclosure

sale of Mr. Lambert's property used to secure a loan from the Bank to the Debtor.  On April 30,

---

[15] Pursuant to Va. Code §6.1-330.54, the judgment rate of interest was nine percent from
1991 to June 30, 2004.  On July 1, 2004, the judgment rate of interest was reduced to six percent.
*See* Va. Code Ann. §6.1-330.54 (Supp. 2005).

[16] The Stipulation provides that the Debtor was paying interest at 9.5% to Highlands
Union Bank on a March 12, 1995 loan, 9.25% to Franchise Mortgage Acceptance Company on
loans made on March 3, 1999 and 8.25% to Highlands Union Bank on a March 28, 2001 loan.
(Stipulation ¶ 29-31.)

2003, the sale proceeds were applied by the Bank to the outstanding balance of the Debtor's loan. (Def.'s Mem. 9.)  The legal basis asserted by Mr. Lambert's counsel is equitable subrogation, pursuant to Va. Code §49-27,  to Highlands Union Bank's rights against the Debtor for which the deed of trust on property owned personally by Mr. Lambert was pledged.  (Def.'s Mem. 10.)

Examination of Lambert's claimed right to setoff, on the ground of equitable subrogation, of the value of his property sold by Highlands Union Bank to satisfy partially its claims against the Debtor  against the Trustee's claim against him arising from the "due from Stockholder" account involves consideration of two distinct sections of the Bankruptcy Code, section 553 dealing with the right of setoff of pre-petition claims held by a creditor of the Debtor against the bankruptcy trustee's claims against it, and section 509 dealing with a co-debtor's right of subrogation for its property transferred to a third party creditor and for which the bankruptcy debtor was primarily liable.  Mr. Lambert's guarantee of his company's debt to the Bank and pledge of his property to secure partially such company's debt to the Bank clearly makes him a co-debtor within the language and intent of 11 U.S.C. §509.  While this section as a general proposition recognizes the right of subrogation of the co-debtor to the creditor's rights against the primarily liable debtor, subsection c thereof provides that such right of subrogation is subordinate to the rights of the creditor against the bankruptcy debtor "until such creditor's claim is paid in full." 11 U.S.C. § 509(c).

Subrogation is founded on the notion that "one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against the other." *American Surety Co. v. Bethlehem Nat'l Bank,* 314 U.S. 314, 417 (1941).

16

> [B]ecause subrogation is an equitable principle, an entity seeking to be
> subrogated to the rights of a creditor under 11 U.S.C. §509(a) must satisfy
> a five-part test derived from general equitable principles of subrogation. .
> . . the codebtor must have made payment to protect its own interests, (2) the
> codebtor must not have been a volunteer, (3) the payment must have
> satisfied a debt for which the codebtor was not primarily liable, (4) the
> entire debt must have been paid, and (5) subrogation must not cause
> injustice to the rights of others.

*In re Valley Vue Venture,* 123 B.R. 199, 203 & n.7 (Bankr. E.D. Va. 1991). It is undisputed that

the amount received by the Bank from the foreclosure sale of Mr. Lambert's property did not pay

the Debtor's balance in full. "Under principles of both equitable subrogation and 11 U.S.C.

§509(c), the right to subrogation is subordinate to the rights of the beneficiary until the entire

amount of the beneficiary's claim has been satisfied." *Id.* at 208; *see* Peter A. Alces, *The Law of*

*Suretyship & Guaranty* §6:28 (July 2005) (stating "[w]hen the underlying obligation is totally

satisfied, the secondary obligor may succeed to the rights of the obligee against the principal.").

Requiring that the surety pay the entire debt to be subrogated to the creditor's rights is for the

benefit of the creditor.

> The [creditor] would be disadvantaged, however, if the [surety] were
> subrogated to rights of the [creditor] before complete satisfaction of the
> underlying obligation. In such a case, the rights obtained by the [surety]
> through subrogation would compete with the remaining rights of the
> [creditor] pursuant to the underlying obligation, with the result that the
> remaining recovery of the [creditor] on account of the underlying obligation
> could be diminished.

Restatement (Third) of Suretyship §27 cmt. b (1996). This is fully consistent with general state

law on this point, including as Lambert's counsel acknowledges, the law of Virginia, in which

the Debtor is based and under which it is incorporated. *See Obibi v. Furcron,* 160 Va. 351, 362,

168 S.E. 340, 344 (1933) (finding that the right of subrogation cannot be enforced until the

17

whole debt is paid); *Combs v. Agee*, 148 Va. 471, 478, 139 S.E. 265, 267 (1927) (holding the original secured creditor is entitled to be paid in full before the surety's subrogation rights attach). The Court concludes that under a theory of subrogation under Virginia law a right of setoff cannot be utilized when the creditor has not been paid in full. Accordingly, the issue before the Court is whether Mr. Lambert has an independent right of reimbursement from the Debtor resulting from his payment of money, the foreclosure sale proceeds from his property, on a debt for which the Debtor was primarily liable, separate and apart from any subrogation rights against property pledged by the Debtor to the Bank in the event the Bank is satisfied in full.

Section 553 does not create a right of setoff. Rather it recognizes any right to setoff accorded by state law. *See Alexander & Jones v. Sovran Bank (In re Nat Warren Contracting Co.)*, 905 F.2d 716, 718 (4th Cir. 1990). Consequently, before considering setoff under §553, Mr. Lambert must be entitled to setoff under Virginia law. Virginia Code §49-27 sets forth the surety's remedies against the principal for money paid by the surety.

> If any person liable as bail, surety, guarantor or endorser, . . . pay, in whole or in part, such note, bond, or other demand, . . . the person having a right of action for the amount so paid may, by motion in the court in which the judgment, decree, or execution was rendered or awarded, obtain a judgment or decree against any person against whom such right of action exists for the amount so paid, with interest from the time of payment, and five per centum damages on such amount. The person so paying, in whole or in part, any such judgment, decree or execution rendered or awarded on account of such liability, or any such note, bond or other demand, shall, by operation of law, **in addition to the remedy above provided**, be substituted to and become the owner of all of the rights and remedies of the creditor for the enforcement and collection of the amount or amounts so paid, and shall be deemed the assignee thereof. Executions, or other legal process to which the principal creditor was entitled, may be issued on any such judgment or decree in the name of the original creditor against the person primarily liable for the benefit of the person secondarily liable to the extent to which he has satisfied the original creditor.

18

> But nothing in this section shall be construed to impair or affect in
> any way the security of the original creditor, or his rights and remedies as
> to any balance which may be due him. The provisions of this section are
> cumulative and are intended to protect the rights of any person secondarily
> liable to the extent to which he has satisfied the obligation of the person
> primarily liable. All assignments heretofore made of judgments and decrees
> to persons secondarily liable are hereby validated, and upon the same
> executions may be issued as hereinbefore provided.

Va. Code §49-27 (2005) (emphasis added). This statute provides Mr. Lambert two remedies

against the Debtor. By operation of law, Mr. Lambert is subrogated to the rights of the Bank

against the Debtor. However, as discussed above, a right of setoff based on subrogation would

fail because the entire debt to the Bank has not been paid. However, the statute also gives Mr.

Lambert directly the right to recover from the Debtor the amount he has paid with interest from

the time of payment. Mr. Lambert's statutory right to recover directly from the Debtor under

Virginia law is consistent with the right to reimbursement from the principal obligor under

general suretyship law. *See, e.g., National Surety Co. v. Julian,* 227 Ala. 472, 478, 150 So. 474,

478 (1933). "The duty to reimburse exists to the extent of the secondary obligor's performance;

full performance by the secondary obligor is not a prerequisite to the duty. Thus, if the secondary

obligor performs only part of the secondary obligation, it is entitled to reimbursement to that

extent." Restatement (Third) of Suretyship §23 (1996). "A partial payment is sufficient to

establish the surety's right against the principal debtor  It is only the creditor who can insist that

the debt shall be paid in full." *Morton v. Dillon,* 90 Va. 592, 596 (1894).

The right to setoff has been allowed on the basis of a claim for indemnification.

"To say . . . that a surety is not entitled to share in the dividends of the estate until the principal

creditor receives full payments of his claim is different from saying that the surety is not entitled

to use his claim against the bankrupt for the limited purpose of setting it off against his own debt

to the bankrupt." *Hayden v. Standard Accident Insurance Co.,* 316 F.2d 598, 602 (9th Cir.

1963)(decided under the Bankruptcy Act). Courts have recognized the right to setoff even though

"the principal creditor's recovery might be that much greater if the surety were required to pay

his debt into the bankrupt's estate" reasoning that if denying setoff and requiring the surety to pay

his debt into the bankruptcy estate were desired, then the Bankruptcy Act could have been

amended to provide that a surety's claim for reimbursement was not provable for purposes of

setoff. *Id.*; *see also  Rochelle v. United States,* 521 F.2d 844, 855 (5th Cir. 1975) (decided under

the Bankruptcy Act) (holding a subordinated claim could be used to setoff a claim by the

bankruptcy estate against the creditor even though the subordinated claim could not itself share in

the dividends).

      A right of setoff based on this independent statutory right to recover from the

Debtor is consistent with the structure of the underlying transaction.  Mr. Lambert personally

signed the note as a co-maker and therefore the Bank would not be prejudiced by allowing him a

right of setoff in the amount paid by him against his separate debt to the Debtor because he

remains liable to the Bank for the entire loan. Indeed not allowing Mr. Lambert a right to setoff

might be viewed as prejudicial to the Bank's rights, to which he is subordinated, because his

financial ability to respond upon his guaranty obligation to the Bank would be lessened by any

payment to the Trustee, which would accrue to the creditors generally and not the Bank

particularly.  This is a different situation than if Mr. Lambert's own personal obligation to the

Bank had been limited, for example, to the deed of trust on his property which he gave to the

Bank.  In that situation, the Bank, having no further recourse against Lambert personally,

20

arguably would be prejudiced by the reduction of the Debtor's claim against Lambert upon the

due from shareholder account.  Such situation, however, is not before the Court in the present

dispute and is not necessary to decide here.

In summary, the subordination of Mr. Lambert's rights to those of the Bank is for

the benefit of the Bank and not for the benefit of the Debtor, which clearly incurs an obligation to

Mr. Lambert to make him whole.  Against this obligation the Debtor could of course setoff any

separate claims it might have against Mr. Lambert, for example, the shareholder loan account.  If

the Debtor would have that right of setoff against Mr. Lambert, surely he must enjoy that same

right against it.  *See Hayden,* 316 F.2d at 602; *Rochelle,* 521 F.2d at 855. Moreover, Virginia law

recognizes that a "surety may set off the claim which he is required to pay for an insolvent

principal against his indebtedness to the principal, although the payments are not actually made

by the surety until after the insolvency of the principal." *Dickenson v. Charles,* 173 Va. 393, 401

(1939).  The basis of this right to setoff is that the payments made by the surety "will, in equity,

be deemed to relate back to the date of the suretyship contract, at which the surety became bound

for the principal's debt and the principal in turn impliedly agreed to reimburse the surety for what

he might thereafter be called upon to pay on his behalf." *Id.*  General suretyship law also

recognizes a surety's right to setoff in an action by the insolvent principal against the surety.

> A principal, who is insolvent, cannot collect a debt, which the surety owes
> him, without first indemnifying the surety.  A surety has in respect to his
> liability the rights of his creditor as against his principal; and upon the
> insolvency of the principal debtor he may retain any funds belonging to
> such debtor by way of indemnity against his liability.  Otherwise a surety in
> such a case would be wholly without remedy, when the plainest principles
> of justice are in his favor.

*Mattingly v. Sutton,* 19 W.Va. 19, 31 (1881); *accord Waugh v. Hood,* 120 W.Va. 291, 292, 109

21

S.E. 515, 515 (1938); *Craighead v. Swartz,* 219 Pa. 149, 152, 67 A. 1003, 1004 (1907). Under

Virginia law, the Court finds that Mr. Lambert has a right to setoff based on his right of

reimbursement from the Debtor, the payment made to the Bank by applying the foreclosure sale

proceeds to the debt for which the Debtor was primarily liable.

   Having found Mr. Lambert's right to setoff is available under Virginia law, the

next inquiry is whether this right is available under §553. To exercise the right to setoff provided

in 11 U. S. C. §553, Mr. Lambert must (1) hold a pre-petition claim against the Debtor; (2) owe a

debt to the Debtor that arose pre-petition; (3) show the obligations are mutual; and (4) prove that

the obligations are valid and enforceable. *See 5 Collier on Bankruptcy* ¶ 553.01 [1] (Alan N.

Resnick & Henry J. Sommer eds., 15th ed. rev.); *see also Neal v. Golden Knights (In re*

*Laughter),* 1995 Bankr. LEXIS 2163, at *8 (Bankr. E.D. Va. Oct. 13, 1995) (stating that party

asserting the setoff has the burden of proof).

Pre-Petition claim against the Debtor

   Pursuant to Mr. Lambert's guaranty of Highlands Union Bank's loan to the

Debtor, the Bank foreclosed on Mr. Lambert's property post-petition. The sale proceeds,

$283,784.40, were applied by the Bank to the balance owed by the Debtor. The Bankruptcy Code

defines claim as a "right to payment, whether or not such right is reduced to judgment,

liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,

equitable, secured, or unsecured." 11 U.S.C. §101(5)(A). When Mr. Lambert signed the

guaranty on the Debtor's loan from Highlands Union Bank, he immediately incurred a contingent

liability to the Bank and gained a contingent claim against the Debtor in the event he paid on the

guaranty. *See Tysons National Bank v. Lennan (In re Lennan),* 1997 U.S. App. LEXIS 27859, at

*11-12 (4th Cir. Oct. 9. 1997) (unpublished); *Stephenson v. Salisbury (In re Corland Corp.)*, 967

F.2d 1069, 1078 (5th Cir. 1992).  When the Debtor defaulted in its obligation to the Bank, the

contingency of Mr. Lambert's claim to the Bank was met and Mr. Lambert was contractually

obligated to pay the Bank the amount owed to it by the Debtor.  At the time the bankruptcy

petition was filed, the parties have stipulated that the Bank had a pre-petition claim against the

Debtor.  Mr. Lambert's right as pre-petition guarantor of the Debtor's loan to the Bank to

reimbursement for the sale proceeds of his property accords him a pre-petition basis from that

claim.

Debtor holds pre-petition claim against Lambert

The parties agree that, subject to resolution of the three issues presented above,

Mr. Lambert owed the Debtor $307,371.54 on the date this case was filed.

Obligations are Mutual

"The established formula for finding mutuality is that the claims be owing to and

be due in the same rights and capacities." *Virginia Block Co. v. Bushong (In re Virginia Block

Co.)*, 16 B.R. 560, 562 (Bankr. W.D. Va. 1981).  The Debtor's claim asserted by its Trustee is for

its own account and is against Mr. Lambert personally.  Likewise his claim against the Debtor is

held in his individual right and represents a general claim against the Debtor.  Accordingly, the

obligations are mutual.

Obligations are Valid and Enforceable

The Trustee argues that Mr. Lambert does not have a right to setoff because he has

not filed a proof of claim. In *Stratton v. Equitable Bank*, 104 B.R. 713, 735 (D.Md. 1989), the

United States District Court for the District of Maryland held "that failure to assert a set-off in a

23

proof of claim in the bankruptcy case does not bar a creditor's right to assert counterclaims and

set-offs pursuant to §553 in a plenary suit."   The court reasoned "while a creditor is entitled to

assert a set-off as an affirmative defense to a trustee's claim against it even when it has not filed

an appropriate proof of claim, such creditor cannot use claims of set-off to obtain an affirmative

recovery against the estate." *Id.* On appeal, the United States Court of Appeals for the Fourth

Circuit affirmed the district court's ruling. *Stratton v. Equitable Bank,* 912 F.2d 464 (4th Cir.

1990) (per curiam).  The holding in *Stratton* is consistent with the prevailing view that "the

failure to file a proof of claim does not prevent the creditor from asserting the right [of setoff] as

a defensive matter, although the creditor may be barred from collecting a dividend with respect to

the amount of the claim that exceeds the creditor's offsetting debt to the debtor." 5 *Collier on*

*Bankruptcy* ¶ 553.07[1].  As such, this Court concludes that Mr. Lambert is entitled to raise the

right to setoff as a defense to the Trustee's claims against him even though he has not filed a

proof of claim.

       The Trustee does not dispute the assertion by Mr. Lambert's counsel that the

Defendant was not bound to raise the issue of setoff in his answer in order to rely upon it as a

partial defense to the claim made against him in this adversary proceeding.  *See In re Laughter,*

1995 Bankr. LEXIS 2163, at *23-27.

       The Trustee argues that under 11 U.S.C. § 502(d) Mr. Lambert does not have an

allowed claim against the Debtor.  Section 502(d) provides:

> the court shall disallow any claim of any entity from which property is
> recoverable under section 542, 543, 550, or 553 of this title or that is a
> transferee of a transfer avoidable under section 522(f), 522(h), 544, 545,
> 547, 548, 549, or 724(a) of this title, unless such entity or transferee has
> paid the amount, or turned over any such property, for which such entity or

24

transferee is liable under section 522(I), 542, 543, 550, or 553 of this title.

The Trustee reasons that Mr. Lambert is the transferee of "numerous transfers avoidable under

§544 and §548 of the Bankruptcy Code and Lambert has not paid over those transfers represented

by the balance of Account 2610 to the Trustee, any claim he may have must be disallowed by the

court." (Trustee's Mem. 7.)    Counsel for Mr. Lambert objected to the Trustee's use of a

fraudulent transfer theory under §544 and/or §548 because that theory was not pled in the

Complaint.  The Complaint states "[t]he Loan Balance is property of the estate and recoverable

by the Trustee pursuant to 11 U.S.C. §542 and §544."[17] (Compl. ¶ 12.)  Furthermore, the

Defendant claims to have "first received notice that the Trustee intended to assert fraudulent

conveyances on or about November 17, 2005 (the date the Defendant was served with the

Trustee's Memorandum), which was after the discovery period had closed." (Def.'s Mem. 8.)

Although the Trustee cited both §542 and §544 in the Complaint, he has alleged

only a simple receivable account due from Mr. Lambert.  Section 544 gives the Trustee among

other things the right of an unsecured judgment creditor having obtained a judicial lien on the

Debtor's property[18] under state law as of the date the bankruptcy petition was filed.  Under

Virginia law, such a creditor would certainly have the right to institute a garnishment proceeding

to recover any amount due to its judgment debtor from a third party and thereby obtain a

judgment against such sub-debtor. See Va. Code §§ 8.01-511 et seq.  Accordingly, the Trustee

does have a right both under §542 and §544 to recover on a simple account debt owed by Mr.

Lambert to the Debtor. In short, there is nothing inconsistent between the Trustee's reference to

---

[17]The Trustee did not seek to amend the Complaint to include fraudulent transfers as a
basis for recovery.

[18] 11 U.S.C. §544(a)(1).

section 544 in his complaint and his assertion of a simple contract claim on the "due from shareholder" account. His reference to that section in general does not serve as a shorthand reference to the Trustee's powers under 544(b) to assert rights of actual creditors under state law, including with respect to Virginia law the right to recover transfers made with intent to hinder, delay or defraud creditors. Therefore, there was no reason for the Defendant in his answer to dispute the reference to section 544 as immaterial to the Trustee's contractual claim against him upon the account. Because the Trustee has alleged only an account debt, the Court concludes the Trustee's cause of action is limited to the recovery of an account debt; thus the Court will not consider any arguments made or supported by case law, which deny the right to setoff when the Trustee has alleged a fraudulent transfer. The Trustee has argued that he is only attempting to assert a theory of fraudulent transfers defensively against the Defendant's assertion of a setoff against the shareholder account claim. After due consideration, however, the Court agrees with counsel for the Defendant that to permit consideration of such issue would allow the Trustee to introduce a theory of recovery by the "back door," a theory never pled, against which a right of setoff might not exist. The Defendant was entitled to reply upon and prepare for the cause of action alleged by the Trustee, not some other theory of recovery which perhaps the Trustee could have asserted but did not.

## CONCLUSION

For the reasons set forth above, the Court will enter judgment by means of a separate order in favor of the Trustee and against **Mr. Lambert** in the amount of $224,086.82 plus interest thereon at the federal judgment interest rate. *See Sanner v. Poli (In re Poli),* 298 B.R. 557, 563 (Bankr. E.D. Va. 2003) (providing "the federal judgment rate as set forth in 28

26

U.S.C. §1961 applies to postjudgment interest awards in the bankruptcy context."). The

judgment amount is calculated as follows:

| | |
|---|---|
| Agreed Amount Owed by Mr. Lambert to Debtor (Stipulation ¶ 17.) | $307,371.54 |
| Entries charged to Account 2610 designated as "Clark" | $22,961.16 |
| Mr. Lambert's Setoff | $283,784.40 |
| | **$46,548.30** |
| 6% interest on $ 46,548.30 from 7/1/04 to 2/3/06[19] | $4,453.33 |
| 9% interest on $ 46,548.30 from 4/30/03 to 6/30/04[20] | $4,912.44 |
| 9% interest on $464,488.10 from 7/1/98 to 6/30/99[21] | $41,803.93 |
| 9% interest on $518,729.48 from 7/1/99 to 6/30/00[22] | $46,685.65 |
| 9% interest on $319,489.69 from 7/1/00 to 6/30/01[23] | $28,754.07 |
| 9% interest on $292,562.63 from 7/1/01 to 6/30/02[24] | $26,330.64 |
| 9% interest on $330,332.70 from 7/1/02 to 4/29/03[25] | $24,598.46 |
| **Total Amount Due as of Date of Judgment** | **$224,086.82** |

---

[19] Va. Code §6.1-330.54 was amended, effective July 1, 2004, reducing the judgment rate of interest from nine percent to six percent. *See* Va. Code Ann. §6.1-330.54 (Supp. 2005).

[20] Highlands Union Bank foreclosed on Mr. Lambert's property and applied the proceeds of the sale to the Debtor's balance on April 30, 2003. (Def.'s Mem. 9.)

[21] *See* chart *supra* p.14.

[22] *See* chart *supra* p.14.

[23] *See* chart *supra* p.14.

[24] *See* chart *supra* p.14.

[25] *See* chart *supra* p.14. Highlands Union Bank foreclosed on Mr. Lambert's property and applied the proceeds of the sale to the Debtor's balance on April 30, 2003. (Def.'s Mem. 9.)

This 3rd day of February, 2006.


UNITED STATES BANKRUPTCY JUDGE